## VICTOR TALKING MACH. CO. v. VREELAND et al.

## No. 4015.

Circuit Court of Appeals, Third Circuit.

Sept. 5, 1930.

Charles Neave and Merrell E. Clark, both of New York City, for appellant.

Wm. H. Davis, of New York City, for appellees.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge.

This is an appeal from a decree of the District Court holding claims 2, 6, and 7 of United States letters patent No. 1,593,735, issued to Frederick K. Vreeland and Frank L. Dyer on July 27, 1926, valid and infringed.

The patent relates generally to the "art of recording sounds." It is used in making phonograph records, and relates more particularly to a plurality of transmitters electrically connected to the same recorder with separate means for controlling the intensity of the current from each transmitter. The music coming in from transmitter or microphone may be too loud, or not loud enough. A listening phone connected across the recorder circuit enables the director in the recording room to hear and regulate the sounds which are being recorded. He can "cut them down if too loud or amplify them if not loud enough."

Electrical recording and the control of the volume of recorded sound in a plurality of transmitters by current regulating means are admittedly old. What the patentees claim to have invented is the *idea* of including the current regulating means in each of the several transmitter branches of a multiple transmitter recording system so that the volume of the sounds transmitted respectively by the microphones may be regulated independently by the operator to vary the artistic effect of the composite record. The defendant, who is appellant here, contends, on the contrary, that the idea was old long before the patentees entered the field, and that the patent is completely anticipated.

The patent, so far as the evidence discloses, is a pure paper patent. There is a serious question as to whether or not it is operative. In each of the claims in issue it is stated that one element of the combination is the means for "separately" controlling the amplitude of the current waves from each transmitter, but the testimony of the plaintiffs, themselves, indicates, if it does not positively establish, that the means are not in fact separate and independent, but interdependent, in that the adjustment of any one potentiometer produces substantially the same volume change in all of the branches as illustrated in figure 3 of the patent. Although the art was looking

for perfected instrumentalities whereby sounds and music could be electrically recorded with faithfulness, it was not accomplished until 1924, by the Western Electric Company, five years after the application for the patent in suit was filed. By the summer of that year Maxfield and his associates had developed a transmitter and recorder, and the production of commercial phonograph records began early in 1925 when the defendant's electrical recording system was installed under a license from the Western Electric Company. The patent in suit does not seem to have produced any effect on the art.

The Western Electric Company's system under which the defendant operated was a single-transmitter system. It had the listening phone and means for controlling the volume of sound. By February, 1926, additional transmitters were added, each transmitter having its own separate means for volume control. The patent in suit had not been issued at this time, and the development of the art had gone on independently of it.

The Calderon patent, No. 1,290,771, granted January 7, 1919, on an application filed March 10, 1917, for improvements in apparatus for recording and reproducing sound, has a single transmitter to effect resistance changes in an electric circuit, a listening phone in the circuit of the recorder, and means for controlling the flow of the current through the circuit.

The Jones patent, No. 1,249,409, issued December 11, 1917, for a sound-transmitting apparatus, has a separate microphone for each group of instruments; "individual variable resistance devices or microphones are applied respectively to the individual sources of concerted sounds, such as to the individual instruments of a band or orchestra, each of such devices being adjusted to the tone-quality of its source or instrument, and the circuits from the several devices being connected to mains or trunks connected to a sound-recording device, recording the concerted current vibrations or undulations produced by the sound vibrations or undulations upon a blank similar to that in the ordinary sound-recording apparatus." Figure 6 is a diagrammatic view of the apparatus for individually conveying the individual sound-created current vibrations from the individual sources of sound to be concertedly recorded.

The Edison patent, No. 1,286,259, issued December 3, 1918, on application filed March 6, 1913, for improvements in means for recording sounds, is adapted for use in con-

nection with "demonstrations of which it is desired to make records only of the audible impressions, as for example, an orchestral piece, (in which) the sounds frequently emanate from various more or less separated points."

It may be questioned as to whether it was invention to place in each of the several transmitter circuits in the multiple-transmitter systems of Jones and Edison a volume control such as is found in the single transmitter system of Calderon.

The British patent No. 7,202, issued in 1914 to Stille, discloses the use of separate volume control in a multiple transmitter electrical recording system in order to obtain the proper balance between sounds emanating from different sources. In the specification he says: "This method of transmission has the advantage that with an orchestra, for example, one transmitter is supplied for the stringed instruments and another for the wind instruments. By different selection of the current strengths the operation of one or the other transmitter is strengthened or weakened, for example it is possible to arrange that the sounds of the stringed instruments, which would otherwise be somewhat feeble, are strengthened relatively to those of the wind instruments."

The Danish patent No. 23,590, issued October 7, 1918, has for its object the recording of sound which "is picked up by several microphones, distributed in the place where the action to be recorded takes place, and from these microphones is transmitted to a common recording telephone mounted on a sound record, a cylinder, plate, band or the like, operated in synchronism with the cinematographic recording apparatus, the recorded sound during the reproduction being picked up by a telegramophone-microphone in a well-known manner and reproduced by a number of loud-speaking telephones placed near the picture screen.

"It is important that the sound record and the film are operated both in synchronism and with the same absolute speed during the recording and the reproduction, since variations in speed are known to distort the reproduction of the sound, and means must also be provided by which the operator of the moving picture apparatus can watch and regulate the intensity and sonorousness, etc of the sound reproduction without causing changes in the speed. According to the present invention, such supervision and adjustment is accomplished by means of a telephone connected in multiple to the recording or re-

producing circuit, and one or more regulation resistances and switches connected in the same circuit or in the circuits of the separate reproducing telephones or recording microphones."

This patent discloses a multiple transmitter recorder system, and states that by the use of regulating resistances in the several transmitter circuits the current intensities in those circuits can be regulated as required to produce the desired artistic effect. It further discloses a listening phone to guide the operator in the regulation of those resistances.

On October 10, 1916, the New York Telephone Society held a meeting. Branch gatherings were held in different cities in New York State, including Newburgh, Kingston, and Binghamton, simultaneously with the main gatherings in the Seventy-First Regiment Armory in New York City. The operation of the system is described as follows: "Telephone lines led from the branch gathering held in each of the above named cities to the telephone company's building at Walker Street in New York City where each of these lines was connected to vacuum tube amplifiers and amplitude controls also located in the same room at Walker Street where there was a listening phone by which the operator or controller could hear how the transmission was coming in and could regulate his various amplitude controls accordingly, the object being to have all of the transmission from the various branch gatherings come in at substantially the same level or intensity. From the Walker Street building the common line went to the Seventy-first Regiment Armory in New York City and was there connected with loud speakers and head sets in the building through other vacuum tube amplifiers and an amplitude control operated by a monitor at that point to control the loudness of the reception."

This system, used in 1916, three years before the patent in suit was applied for, disclosed a multiple-transmitter electrical circuit and a listening phone to guide the operator in regulating the intensity of the sounds as they came in, so that those from the several transmitters would be at the desired degree of intensity. That the transmitters were located in different parts of the state rather than in different parts of the same room is immaterial. It is likewise immaterial whether or not the common line to which the several transmitter circuits are connected leads to a phonograph recorder, broadcasting equipment, telephone receiver, or vacuum tube amplifiers, for the invention

resides in controlling the circuits in advance of their connection with the common line for the purpose of securing the composite sound at the same level or intensity.

It seems to us that the prior art definitely disclosed a separately controlled multiple-transmitter recording system, which is substantially everything that the patent in suit claims. It was therefore anticipated, and so is invalid.

The decree of the District Court is reversed.